UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PAUL HENAULT, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 14-cv-30076-MGM |
| | ) | |
| CITY OF SPRINGFIELD MOBILE HOME | ) | |
| HOME RENT CONTROL BOARD, et al., | ) | |
| | ) | |
| Defendants. | ) | |

REPORT AND RECOMMENDATION REGARDING
DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS
(Dkt. No. 20)

ROBERTSON, U.S.M.J.

I.      Introduction

        This action arises out of a January 30, 2014 Rate Setting Decision (the "Decision") by

Defendant City of Springfield Mobile Home Rent Control Board (the "Board") approving an

increase in the monthly rent Hayastan Industries, Inc. ("Hayastan Industries"), the owner of

Bircham Bend Mobile Home Park (the "Park"), is permitted to charge its tenants.  Plaintiffs Paul

Henault and Gene Desko (collectively, "Plaintiffs"), both tenants of the Park, filed a complaint

on March 25, 2014 in the Massachusetts Housing Court – Western Division seeking judicial

review of the Decision pursuant to the State Administrative Procedure Act, M.G.L. c. 30A, § 14.

Joined with Plaintiffs' request for judicial review of the Board's decision (Count I) are claims for

declaratory relief pursuant to M.G.L. c. 231A, et seq. (Count II) and for procedural due process

violations under 42 U.S.C. § 1983 (Count III).  On April 25, 2014, the Board removed the case to

this court.  On October 10, 2014, the court granted Hayastan Industries' assented to motion to

intervene and join as a defendant.

The Board has moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) as to all three counts of Plaintiffs' complaint (Dkt. No. 20).  For the reasons stated below, the court recommends allowing the Board's motion as to Count III of the complaint asserting a claim under 42 U.S.C. § 1983.  The court further recommends that the two remaining counts of the complaint asserting state law claims be remanded to the Massachusetts Housing Court – Western Division.

II.     <u>Background</u>

A. <u>Statutory and Regulatory Framework</u>

In 1985, the Legislature enacted St. 1985, c. 610 (the "1985 Enabling Law"), which declared that unwarranted rental increases imposed by some owners of mobile home parks had resulted in a serious public emergency in the city of Springfield.  *Id*. at § 1.  The statute empowered the city to establish by ordinance a rent board that would regulate mobile home park rents "so as to remove hardships or correct inequities for both the owner and tenants."  *Id*. at § 2.  The rent board was authorized to make individual or general adjustments of rents up or down to assure owners a fair net operating income, defined as:

> that income which will yield a return, after all reasonable operating expenses, on the fair market value of the property equal to the debt service rate generally available from institutional first mortgage lenders or such other rates of return as the board on the basis of evidence presented before it, deems more appropriate to the circumstances of the case.

*Id*. at § 3.  The 1985 Enabling Law provided that the rent board would have "all the powers necessary to perform its functions [and to] make rules and regulations," and would be subject to the provisions of the State Administrative Procedure Act, M.G.L. c. 30A, "as if said rent board were an agency of the commonwealth."  *Id*. at § 4.

Springfield passed its mobile home rent control ordinance, Revised Code of Ordinances of the City of Springfield, c. 30, on May 14, 1986, thereby creating the City of Springfield Mobile Home Rent Control Board with the stated administrative powers.  On October 22, 1987, the Board adopted Rules and Regulations, which provided, *inter alia*, that the "[t]he maximum rent of a mobile home park accommodation shall be the rent charged as of the date of December 31, 1986," subject to individual or general adjustments by the Board, observing the principle of establishing levels that would yield the owners a fair net operating income as defined in the 1985 Enabling Law.  City of Springfield Rules and Regulations for Mobile Home Park Accommodations and Rents, §§ 2, 4.  For purposes of calculating fair net operating income, the rules define operating and maintenance expenses as, "[t]he expenses of reasonable and necessary services to a mobile home park … not including mortgage interest and amortization."  *Id*. at § 1(H).

      B.  <u>Plaintiff's Complaint</u>[1]

Plaintiffs Paul Henault and Gene Desko are both residents of the Park (Dkt. No. 1-3, at ¶¶ 3, 4).  Plaintiff Henault lives at lot 96 and has lived at the Park since April 2006 (*id*. at ¶ 3).  Plaintiff Desko lives at lot 131 and has lived at the Park since before Hayastan Industries purchased it (*id*. at ¶ 4).

---

[1] The Board asks the court to consider the January 30, 2014 Rate Setting Decision as well as Plaintiffs' Complaint in deciding the instant motion, and Plaintiffs do not object.  The court agrees that the Decision could be considered.  *See Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (noting that courts can look at documents not attached to a complaint or expressly incorporated therein without converting a motion to dismiss into one for summary judgment for documents the authenticity of which is not disputed by the parties, for official public records, for documents central to the plaintiff's claim, or for documents sufficiently referred to in the complaint).  Here, the Decision, the authenticity of which neither party has challenged, is referenced repeatedly in both parties' arguments, is a public document, and is central to Plaintiffs' claims.  However, the court finds it unnecessary to consider it for purposes of this Report & Recommendation.

On February 1, 2013, Hayastan Industries submitted a petition to the Board for approval of a rent increase at the Park (*id*. at ¶ 6).  Thereafter, on August 5, 2013, certain occupants of the Park, including Plaintiffs, submitted a petition for a rent decrease at the Park (*id*. at ¶7).  The Board held an adjudicatory hearing on the petition for a rent increase on October 23, 2013, and on the petition for rent decreases on December 18, 2013 (*id*. at ¶¶ 8-9).  On January 30, 2014, the Board issued its Decision approving a $46 per month rent increase on residents paying a rent of $214.00 per month (*id*. at ¶¶ 19, 22).  The Board ordered that the rent adjustment would take effect on April 1, 2014 (*id*. at ¶ 20).  The Board's Decision stated that any appeal of the Decision was to take place within 30 days of January 31, 2014 (*id*. at ¶ 20).

Plaintiffs challenge the Board's methodology in approving the rent increase claiming it is in violation of its Rules and Regulations (*id*. at ¶¶ 11-18).  Specifically, Plaintiffs claim that the Board violated its Rules and Regulations by finding that the most appropriate way of determining fair net operating income was to calculate net income after allowable expenses and by including as an allowable expense an estimate of debt service based on a fictitious mortgage that would be required to purchase the property at its assessed value (*id*.).  Plaintiffs claim that the Board's Decision exceeds its statutory authority, is based upon an error of law, is unsupported by substantial evidence, and is arbitrary and capricious, an abuse of discretion, and is otherwise not in accordance with law (*id*. at ¶¶ 21-25).  Plaintiffs further claim that, to the extent that the Board violated its own rules, it effectively changed its rules without following the proper procedures for public notice and comment pursuant to the State Administrative Procedure Act, M.G.L. c. 30A, §§ 2, 3 (*id*. at ¶¶ 17, 23).  Finally, Plaintiffs claim that the Board violated their due process rights under the state and federal constitutions by disregarding its Rules and Regulations, effectively promulgating new rules, implementing the rent increase at the Park

without requiring Hayastan Industries to send out proper notices to tenants, and shortening the time period in which to appeal the Board's Decision (*id*. at ¶¶ 28-32).

III.    Discussion

A.    Standard of Review

Pursuant to Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  A complaint should not be dismissed under Rule 12(c) unless, after accepting all well-pleaded facts as true and drawing all reasonable inferences in favor of a plaintiff, "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Pasdon v. City of Peabody*, 417 F.3d 225, 226 (1st Cir. 2005) (quoting *Rivera–Gomez v. de Castro,* 843 F.2d 631, 635 (1st Cir.1998)).

B.    Analysis

1.    Plaintiffs' Federal Claim

Plaintiffs have asserted their federal claim under 42 U.S.C. § 1983, which "'creates a remedy for violations of federal rights committed by persons acting under color of state law.'" *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 40-41 (1st Cir. 2009) (quoting *Haywood v. Drown*, 556 U.S. 729, 731 (2009)).  "An actionable section 1983 claim must allege facts sufficient to support a determination '(i) that the conduct complained of has been committed under color of state law, and (ii) that [the alleged] conduct worked a denial of rights secured by the Constitution or laws of the United States.'"  *Rumford Pharmacy, Inc. v. City of East Providence*, 970 F.2d 996, 998 (1st Cir. 1992) (quoting *Chongris v. Bd. of Appeals*, 811 F.2d 36, 40 (1st Cir.), *cert. denied*, 483 U.S. 1021 (1987)).  The Board does not contest that its actions were taken under color of Commonwealth law.  Therefore, the sufficiency of Plaintiffs' federal claim turns on whether they

have alleged facts sufficient to show the deprivation of a federally protected right. *See, e.g., Pease v. Burns*, 719 F. Supp. 2d 143, 150 (D. Mass. 2010) (finding plaintiffs' § 1983 claims sufficient as to the requirement that the complained of action be taken under color of law for purposes of a motion to dismiss where defendants did not contest that element).

Plaintiffs allege that their procedural due process rights were violated in connection with the Board's Decision approving the rent increase. The Fourteenth Amendment's Due Process Clause provides that no state may "deprive any person of life, liberty, or property without due process of law …." U.S. Const. Amend. XIV, § 1. "A viable claim … must allege facts sufficient to demonstrate two factors: first, that Plaintiff has been deprived of an interest encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property' and, second, that the procedures accompanying the deprivation were constitutionally insufficient." *Pease*, 719 F. Supp. 2d at 151 (citing *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *Hewitt v. Helms*, 459 U.S. 460, 472 (1983); *Costa-Urena v. Segarra*, 590 F.3d 18, 26 (1st Cir. 2009)).[2]

(a) <u>Constitutionally Protected Interest</u>

"The threshold question in any claim for denial of procedural due process is whether plaintiffs were deprived of a liberty or property interest protected by the United States Constitution." *Aponte-Rosario v. Acevedo-Vila*, 617 F.3d 1, 9 (1st Cir. 2010) (citing *Lowe v. Scott*, 959 F.2d 323, 334 (1st Cir. 1992)). "Property interests … are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings

---

[2] Plaintiffs do not identify in their complaint whether their due process claim is procedural or substantive. However, in their opposition to the Board's motion, they argue only that they have sufficiently stated a procedural due process claim.

that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

Here, Plaintiffs claim they have a constitutionally protected property interest in the amount of their rent stemming from the Board's regulation of mobile home park rents pursuant to the 1985 Enabling Law.  For support, Plaintiffs rely decisions from other jurisdictions involving the procedural rights of tenants of housing constructed under various provisions of the federal Housing Act.  These cases are discussed below.  The Board disputes that Plaintiffs have a protected property interest, relying on the seminal due process case, *Roth*, which is factually distinguishable and provides only broad guidance, while doing little to illuminate the precise issue before the court.

In the first case Plaintiffs cite, *Geneva Towers Tenants Org. v. Federated Mortg. Investors*, 504 F.2d 483 (9th Cir. 1974), the court held that tenants of two federally subsidized housing projects had a constitutionally protected interest in the continued receipt of the benefits of low-cost housing.  *Id*. at 489.  The housing projects were privately owned, but rent increases required administrative approval by the Federal Housing Administration ("FHA") subject to the overall goal of providing reasonable charges to tenants and a fair return to owners.  *Id*. at 486-487.  The landlords of the two housing projects in *Geneva Towers* had applied for and been granted rent increases; in neither case were the tenants given any notice or opportunity to participate in the determination of the rent increases.  *Id*. at 487.  The court analyzed the issue of whether the tenants had a property interest according to the Supreme Court's guidance in *Roth* and *Perry v. Sindermann*, 408 U.S. 593 (1972).

In *Roth*, the Court held that a nontenured teacher who had completed a one year term of employment and was not rehired was not entitled to due process.  *Id*., 408 U.S. at 569.  The

7

Court reasoned that, "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it." *Id*. at 577.  The *Roth* Court concluded that the nontenured teacher had merely an abstract concern and not a property interest in being rehired.  *Id*. at 578.  In *Sindermann*, the Court held that a nontenured teacher who had taught in the Texas state college system for ten years could have a legitimate claim of entitlement to continued employment arising from a de facto tenure program arising out of rules and understandings concerning teacher reappointment.  *Id*., 408 U.S. at 601-603.

The *Geneva Towers* court summed up the teachings of *Roth* and *Sindermann* as follows: "[t]hus *Roth* requires more than an abstract need or unilateral expectation of a benefit.  And *Sindermann* demonstrates that the source need not be explicit but can be implicit in the overall workings of a governmental program." *Geneva Towers Tenants Org.*, 504 F.2d at 489.  In concluding that the tenants had a cognizable property interest entitling them to due process, the *Geneva Towers* court reasoned:

> Congress' purpose [in enacting § 221(d)(3) of the Housing Act of 1961, 12 U.S.C. § 1715l(d)(3)] was … to provide the tenants with the benefit of low cost housing.  The source of the tenants' entitlement is explicit: it lies in the congressionally stated purpose of providing persons of meager economic means with low-priced housing, *see* 12 U.S.C. § 1715l(a), and the statutory requirement that the FHA regulate the rents charged by the private developer. *See* 12 U.S.C. § 1715l(d)(3).

*Id*. at 490.  The court found that the tenants were not entitled to a "full-dress hearing," however. *Id*. at 492.  Rather, they were entitled to notice and an opportunity to make written objections before FHA approval of the landlord's request, and receipt of a concise statement of the FHA's reasons for its action thereafter.  *Id*.

In the second case Plaintiffs cite, *Burr v. New Rochelle Mun. Hous. Auth.*, 479 F.2d 1165 (2d Cir. 1973), citing to *Roth*, the court held that tenants of a municipal public housing project had an "interest at stake" with respect to the imposition of additional rent charges of such a nature as to be within the protection of the Fourteenth Amendment. *Id*. at 1167-1168.  Having found that the plaintiffs had a protected property interest, the court found that the tenants were not entitled to a full adversary hearing, but rather to notice and an opportunity to submit written objections and other written materials before any rent increase, and a written decision outlining the reasons for either the approval or rejection of the requested increase thereafter. *Id*. at 1170. The court noted that this "less formal procedure" was much the same as the procedure afforded to the tenants in *Geneva Towers*. *Id*. at 1170 n. 4.[3]

Plaintiffs' reliance on *Geneva Towers* and *Burr* to support their claim that they have a protected property interest in the amount of their rent has some traction.  As tenants, they appear to be the primary intended beneficiaries of the 1985 Enabling Law[4] and may possess a statutorily-created entitlement arising from the requirement that the Board, once created, regulate

---

[3] Plaintiffs also rely on *Thompson v. Washington*, 497 F.2d 626 (D.C. Cir. 1973), which held that tenants of low-rent public housing were entitled to notice of proposed rent increases and the right to be heard by written submissions. *Id*. at 641.  Plaintiffs' reliance on *Thompson* is misplaced because the *Thompson* court was quite clear that it was declining to place its holding on constitutional due process grounds. *Id*. at 633, 639.  Rather, its holding that the tenants had a right to some process was founded on statutory grounds arising implicitly from the provisions of the Housing Act. *Id*.  Accordingly, *Thompson* has no applicability to this case, which does not involve the Housing Act.

[4] The Board argues in its motion that Plaintiffs have no property interest protected by the 1985 Enabling Law because the only interest protected by the law is that of the owner in establishing rental rates that yield a fair net operating income.  This argument is at odds with the explicitly stated purpose of the act to address a public emergency relating to unwarranted rental increases in mobile home parks in Springfield by regulating rents "so as to remove hardships or correct inequities for both the owner and the tenants ...."  Id. at §§ 1, 2.  The emergency stemmed from unregulated rents and evictions of tenants, not from owners' inability to obtain fair net operating incomes absent government regulation.

the rents charged by the owner.  However, *Geneva Towers* and *Burr* conflict with an earlier

decision out of this circuit, *Hahn v. Gottlieb*, 430 F.2d 1243 (1st Cir. 1970).

The plaintiffs in *Hahn* were tenants of housing financed under § 221(d)(3) of the Housing

Act, whose landlord had filed a petition for a proposed monthly rental increase.  *Id*. at 1244.

Initially, the plaintiffs were denied an opportunity to be heard, but, after filing suit in the federal

district court, the FHA agreed to provide a hearing at which several tenants offered evidence.  *Id*.

at 1244-1245.  After the FHA granted the landlord an increase, the plaintiffs pressed their

procedural due process claim, arguing that they were entitled to a full hearing, including an

opportunity to cross-examine adverse witnesses, and an agency decision based on a formal

record.  *Id*.  *Hahn* was decided before *Roth* and *Sindermann*, and the court analyzed the issue

under an earlier Supreme Court case, *Goldberg v. Kelly*, 397 U.S. 254 (1970).  In *Goldberg*, the

Court held that welfare benefits were a matter of statutory entitlement for persons qualified to

receive them such that recipients were entitled to an evidentiary hearing before they could be

terminated.  *Id*. at 262-264.  The *Hahn* court held that the tenants before it were "not legally

'entitled' to low rents in the same sense that the welfare recipient in *Goldberg* … was entitled to

basic sustenance under a system of categorical assistance," and, therefore, the tenants were not

constitutionally entitled to an administrative hearing on their landlord's petition for increased

rent.  *Id*., 430 F.2d at 1247-1249.

Plaintiffs do not address *Hahn* in their opposition to the Board's motion.  A fair reading

of *Hahn* suggests that it may foreclose Plaintiffs from establishing a protected property interest

in the amount of their rent.  The question does not seem to be entirely resolved, however, for two

reasons.  First, *Hahn* was decided before *Roth* and *Sindermann*, both of which provide additional

guidance on the issue of whether a plaintiff has a protected property interest in a particular

government benefit.  Second, a more recent First Circuit decision, *Aponte-Rosario v. Acevedo-Vila*, 617 F.3d 1 (1st Cir. 2010), seems to leave open the possibility that Plaintiffs have identified a protected property interest.  The plaintiffs in *Aponte-Rosario* were residents of a public housing project, who asserted procedural due process claims in connection with the approval by the defendants, the Puerto Rico Public Housing Administration and the Department of Housing and Urban Development, of an application for its demolition.  *Id*. at 3-4.  The district court granted summary judgment in favor of the defendants, and the First Circuit affirmed.  *Id*. at 4.  In analyzing the due process claim, the court, citing to *Geneva Towers* and without citing to *Hahn*, assumed without deciding (and without discussion) that the plaintiffs had a protected property interest in the form of an expectation to remain in their public housing units.  *Id*. at 9.  Nevertheless, the court affirmed summary judgment on the basis of the second prong of the procedural due process inquiry, finding that the plaintiffs had not been deprived of the minimum constitutional guarantees to which they were entitled because they had notice of the decision to demolish and had the opportunity to participate in a series of hearings in which the proposed demolition was discussed.  *Id*. at 10.

Thus, the question of whether Plaintiffs have a constitutionally protected property interest in the amount of their rent under these circumstances appears to be an open question.  Because of this uncertainty over a question of constitutional dimension, the court recommends declining to answer it at this stage of the litigation, particularly in light of the fact that the Board's 12(c) motion can be resolved at the second step of the procedural due process inquiry.  *See, e.g., Elena v. Municipality of San Juan*, 677 F.3d 1, 8 (1st Cir. 2012) (declining to decide whether plaintiffs had a constitutionally protected property interest in a tree on their property in the context of affirming the district court's dismissal of plaintiffs' procedural due process claim pursuant to

Fed. R. Civ. P. 12(c) where the procedure afforded was constitutionally adequate); *Aponte-Rosario*, 617 F.3d at 9 (discussed above).

(b) <u>Process Due</u>

"'[D]ue process is flexible and calls for such protections as the particular situation demands.'" *Aponte-Rosario*, 617 F.3d at 9 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). "Despite this flexibility, it is well-settled that the essential requirements of procedural due process include adequate notice and an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* (quoting *Amsden v. Moran*, 904 F.2d 748, 753 (1st Cir. 1990) (citation and internal quotation marks omitted)).

> As the rubric itself implies, 'procedural due process' is simply 'a guarantee of fair procedure.' …. When a procedural due process claim is advanced, the proper focus must be on the manner in which the state has acted: 'how and when' the alleged deprivation was effected. Whether the deprivation … was itself erroneous is beside the procedural due process point.

*Amsden*, 904 F.2d at 753 (internal citations omitted).

In this case, Plaintiffs' complaint contains no allegations that the Board failed or refused to provide them with notice or an opportunity to be heard. Plaintiffs allege that the Board conducted adjudicatory hearings on both Hayastan Industries' petition for approval of a rent increase and on Plaintiffs and the other occupants' petition for a rent decrease. Plaintiffs allege that the Board issued a written decision following the adjudicatory hearings. The adjudicatory hearings were governed by the State Administrative Procedure Act, which requires the giving of reasonable notice and the taking of evidence through the examination and cross-examination of witnesses, the introduction of exhibits, and the submission of rebuttal evidence. M.G.L. c. 30A, § 11. The Act further requires that any decisions of the Board be in writing and include a statement of reasons for the decision, including a determination of each issue of fact or law

necessary to the decision.  *Id.*  Plaintiffs have not alleged that these procedures were not followed.  Because Plaintiffs' complaint contains no allegations of any shortcomings relating to the provision of notice or an opportunity to be heard, their § 1983 claim is subject to dismissal.[5]  *See Roman-Oliveras v. Puerto Rico Elec. Power Auth.*, 655 F.3d 43, 47-48 (1st Cir. 2011) (affirming the district court's dismissal of the plaintiff's § 1983 claim on a motion to dismiss where the complaint contained no allegations regarding either lack of notice or the absence of a meaningful opportunity to be heard).

Plaintiffs nevertheless characterize the procedure that was provided as "constitutionally flawed" as a result of the Board's violation of its own Rules and Regulations in adjudicating the rent increase and exceeding of its statutory authority in shortening the time period for an appeal of its Decision and implementation of the rent increase.  These challenges actually relate to the substance of the Board's Decision, not the procedure.  Even accepting Plaintiffs' allegations as true, as the court must for purposes of deciding a Fed. R. Civ. P. 12(c) motion for judgment on the pleadings, however, an agency's failure to follow its own rules does not amount to a procedural due process violation.  *See Torres-Rosado v. Rotger-Sabat*, 335 F.3d 1, 10 (1st Cir. 2003) (affirming the district court's granting of summary judgment to defendants on plaintiff's § 1983 claim where the plaintiff alleged "that the procedures employed departed from applicable regulations under Puerto Rico law," because "[a]n agency's failure to follow its own rules may be significant in administrative law, but the federal Due Process Clause does not incorporate the

---

[5] Significantly, the procedures attendant to the adjudicatory hearings in this case were far greater than the process to which the *Geneva Towers* and *Burr* courts found the tenants before them were entitled, i.e. notice and an opportunity to make written submissions before any decision and receipt of a written explanation of the decision.

particular procedural structures enacted by state or local governments; these claims should be pursued, if at all, under [state] law").

Moreover, Plaintiffs' claims that the Board violated its own Rules and Regulations in its calculation of fair net operating income, effectively changed its rules without following proper procedures, improperly implemented the rent increase at the Park, and improperly shortened the time period in which to appeal the Board's decision are all redressable under state law. Section 14 of M.G.L. c. 30A entitles an aggrieved party to judicial review of the final decision of any agency by means of a civil action wherein a court, sitting without a jury, considers the record developed before the agency, supplemented "upon such conditions as the court deems proper." M.G.L. c. 30A, § 14(5) - (6). Although the court is to give due weight to the expertise of the agency and the discretion conferred upon it by the Legislature, it is authorized to affirm, remand, set aside, or modify the agency decision if it "determines that the substantial rights of any party may have been prejudiced . . . ." M.G.L. c. 30A, § 14(7). Among the conditions warranting court action are that the agency decision was in violation of constitutional provisions, in excess of the statutory authority or jurisdiction of the agency, based upon an error of law, made upon unlawful procedure, unsupported by substantial evidence, arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law. M.G.L. c. 30A, § 14(7). Review of the court's decision is to the Appeals Court or the Supreme Judicial Court, which share concurrent jurisdiction. M.G.L. c. 30A, § 15.

Thus, Plaintiffs have the opportunity through M.G.L. c. 30A, § 14 to have all of their grievances with the Board's Decision addressed and resolved and have, in fact, sought this review. "The failure on [P]laintiffs' part to allege the absence of adequate state court remedies is alone enough to require judgment for the [Board] on the procedural due process claim."

*Burnham v. City of Salem, Mass.*, 101 F. Supp. 2d 26, 35 (D. Mass. 2000) (citing *Zinermon v. Burch,* 494 U.S. 113, 125-126 (1990); *Roy v. City of Augusta, Me.*, 712 F.2d 1517, 1523 (1st Cir. 1983)).  *See also Creative Env'ts, Inc. v. Estabrook,* 680 F.2d 822, 832 n. 9 (1st Cir.), *cert denied,* 459 U.S. 989 (1982) (stating that "where a state has provided reasonable remedies to rectify a legal error by a local administrative body ... due process has been provided, and … section 1983 is not a means for litigating the correctness of the state or local administrative decision in a federal forum"); *Ragnar v. Morrissey*, 630 F. Supp. 2d 111, 114 (D. Mass. 2009) (holding that plaintiff's complaint failed to state an adequate procedural due process claim where plaintiff did not allege that the post-deprivation procedures provided in M.G.L. c. 30A, § 14 were inadequate).

Given the rigorous pre- and post-deprivation processes under the State Administrative Procedure Act, it is beyond doubt that Plaintiffs could prove no set of facts that would entitle them to relief on a claim that the Board's procedures were constitutionally infirm.  As such, Plaintiffs' claim stated in Count III of their complaint for procedural due process violations is subject to dismissal pursuant to Fed. R. Civ. P. 12(c).

2.  Plaintiffs' State Law Claims

Under 28 U.S.C. § 1367, a district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims under which it has original jurisdiction. 28 U.S.C. § 1367(c).  Thus, the termination of Plaintiffs' foundational federal claim sets the stage for the court's exercise of informed discretion to decline to adjudicate the lingering state law claims.  *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 256-57 (1st Cir. 1996) (citing 28 U.S.C. § 1367(c)(3)) (authorizing a district court to decline adjudication of lingering state-law claims after it has dismissed "all claims over which it has original jurisdiction").  "No

categorical rule governs the analysis; a court must weigh concerns of comity, judicial economy, convenience, and fairness." *Redondo Const. Corp. v. Izquierdo*, 662 F.3d 42, 49 (1st Cir. 2011) (citing *Roche,* 81 F.3d at 257; *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "'[I]n the *usual* case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Id*. (quoting *Carnegie-Mellon Univ*., 484 U.S. at 350 n. 7).

In this case, where the federal-law claim providing the basis for supplemental jurisdiction would be dismissed in the context of a Fed. R. Civ. P. 12(c) motion for judgment on the pleadings, all of the factors would weigh in favor of the court's declination of continuing jurisdiction. *See, e.g., Camelio v. Am. Fed'n*, 137 F.3d 666, 672 (1st Cir. 1998) (citing *Rodriguez v. Doral Mortg. Corp.,* 57 F.3d 1168, 1177 (1st Cir.1995)) (observing that "the balance of competing factors ordinarily will weigh strongly in favor of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation"). *See also Pease*, 719 F. Supp. 2d at 155 (declining to exercise supplemental jurisdiction over remaining pendant state law claims where the court dismissed plaintiffs' allegations of federal procedural due process violations for failing to state a claim). Remanding this matter to the Massachusetts Housing Court – Western Division for judicial review of the Board's Decision in accordance with the State Administrative Procedure Act is particularly appropriate, given the purpose of the Housing Court "to provide for '[a] specialized, expert and remedial judicial procedure … to stimulate better housing maintenance and better relations between property owners and occupants for the well-being of the public at large.'" *LeBlanc v. Sherwin Williams Co.*, 551 N.E.2d 30, 35 (Mass. 1990) (citing 1971 House Docs. Nos. 956, 4202).

C. <u>Conclusion</u>

For these reasons, it is this court's RECOMMENDATION that Defendant's Motion for

Judgment on the Pleadings be allowed as to Count III of the Complaint asserting a claim under

42 U.S.C. § 1983.  The court further recommends that the remaining counts of the Complaint

asserting state law claims be remanded to the Massachusetts Housing Court – Western Division.[6]

/s/ Katherine A. Robertson
KATHERINE A. ROBERTSON
United States Magistrate Judge

DATED: May 21, 2015

---

[6] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court within fourteen (14) days of the party's receipt of this Report and Recommendation.  The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection.  The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation.  *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980).  *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.